[No. D056064. Fourth Dist., Div. One. Mar. 3, 2011.]

DAN CLARK FAMILY LIMITED PARTNERSHIP, Plaintiff and Appellant,
v.
JULIETA ADA MIRAMONTES et al., Defendants and Respondents.

## COUNSEL

Law Office of Andrew B. Kaplan, Andrew B. Kaplan and William Tucker for Plaintiff and Appellant.

Horton, Knox, Carter & Foote, Margarita McKee Haugaard and Melissa Blackburn for Defendants and Respondents.

## OPINION

**AARON, J.—**

### I.

### INTRODUCTION

Plaintiff Dan Clark Family Limited Partnership (Dan Clark) appeals from a judgment entered after the trial court sustained defendants' demurrer to Dan Clark's third amended complaint, without leave to amend. The trial court concluded that Dan Clark's causes of action for conversion and claim and delivery were untimely under the three-year statute of limitations that applies to the claims.

On appeal, Dan Clark contends that the trial court erred in finding that the statute of limitations was not tolled pursuant to Code of Civil Procedure[1] section 351, which tolls the statute of limitations for the time period during which a defendant is out of California. The trial court concluded that application of section 351 to toll the limitations period for plaintiff's claims would violate the commerce clause of the United States Constitution (Commerce Clause).

We conclude that applying section 351 to toll the statute of limitations in this case would run afoul of the Commerce Clause because it would force a nonresident defendant to choose between remaining in the state for several years, or returning to his or her place of residence, thereby forfeiting the protections of the statute of limitations. Putting nonresident defendants to such a choice would discourage nonresidents from engaging in even a single commercial transaction in California. Because Dan Clark raises no other issues on appeal, we affirm the judgment of the trial court.

### II.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A. *Factual background*[2]

Dan Clark is a limited partnership domiciled in Texas. The Miramonteses are residents of Mexico.

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] We take the relevant factual background from the third amended complaint, to the extent that its allegations are not contradicted by allegations asserted in the prior complaints. (See *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 495 [93 Cal.Rptr.2d 327, 993 P.2d 983] ["On appeal from dismissal following a sustained demurrer, we take as true all well-pleaded factual allegations of the complaint."].)

In early May 2001, Dan Clark purchased three commercial vehicles (the Vehicles) from a company in Stockton, California. Dan Clark financed the purchase of the Vehicles with an $80,000 loan from CIT Group/Equipment Financing, Inc. (CIT). Dan Clark obtained Texas certificates of title for the Vehicles and registered the Vehicles in Texas. Dan Clark has continued to maintain registration of the Vehicles in Texas.

Immediately after purchasing the Vehicles, Dan Clark authorized James Frehner to pick up the Vehicles in California and deliver them to Dan Clark in Texas. The record is unclear as to the precise terms of the arrangement between Dan Clark and Frehner with respect to the pickup and delivery of the Vehicles.[3] Frehner never delivered the Vehicles to Dan Clark.

Between 2001 and 2003, Dan Clark's principal attempted to contact Frehner by telephone and made a number of trips to Las Vegas, Nevada, where he believed Frehner maintained a trucking business. At some point, Dan Clark became aware that Frehner had closed his trucking business in Nevada.

Dan Clark sets forth a number of allegations describing its attempts to locate Frehner and the Vehicles between 2001 and 2004. Dan Clark also filed suit against Frehner in Nevada in an attempt to recover the Vehicles, and obtained a judgment against Frehner, as well as a writ of possession. Dan Clark was unable to execute on the writ of possession because it could not locate the Vehicles.

In November or December 2004, an employee of Dan Clark contacted California's Department of Motor Vehicles (DMV) and explained that he was attempting to locate certain missing vehicles for which valid title and registration had been issued in Texas. A DMV employee informed Dan Clark's employee that someone had "tried to register" the Vehicles in California. After additional communication with the DMV, Dan Clark became aware that as of 2003, an individual identified as Ada Julieta Miramontes[4] had been listed as the registered owner of the Vehicles. DMV representatives

---

[3] The Miramonteses assert that Dan Clark's "allegations in its pleadings regarding how Frehner came into possession of the Vehicles and Frehner's subsequent conversion of these Vehicles are inconsistent and contradictory." The details of this transaction are not relevant to our analysis.

[4] Respondents note in their brief that Ms. Miramontes was erroneously sued as Julieta Ada Miramontes, rather than as Ada Julieta Miramontes. However, throughout the record, as well as in oral argument, she was referred to as Julieta.

indicated to Dan Clark that the DMV would rescind any California title or registration that had been issued with respect to the Vehicles.

The same Dan Clark employee who contacted the DMV also attempted to contact Julieta Miramontes about the Vehicles by telephone. A woman answered the call, but hung up without providing any information. Dan Clark then hired an attorney in California who wrote a letter to Julieta Miramontes and her brother, Alejandro Miramontes, notifying them that Dan Clark was the rightful owner of the Vehicles.[5]

Dan Clark eventually filed suit against the Miramonteses in July 2007. After conducting additional investigation with the DMV and propounding discovery in the lawsuit, Dan Clark came to believe that on March 27, 2002, Frehner purported to convey ownership of the Vehicles to the Miramonteses. Dan Clark alleges that the Miramonteses knew that Frehner did not own the Vehicles when they took possession of the Vehicles from Frehner, and that the Miramonteses actively concealed the conveyance from Dan Clark.

In its complaint, Dan Clark alleges that the Miramonteses were outside of California for an undetermined period of time between March 27, 2002, and July 20, 2007, and that during this time, the Miramonteses traveled between California and Mexico for personal reasons. Dan Clark further alleged that the Miramonteses did not engage in interstate commerce while they were in California during this time period.

B. *Procedural background*

Dan Clark filed its initial complaint in this action on July 20, 2007, and filed a first amended complaint on February 19, 2008.

On April 21, 2008, the Miramonteses filed a demurrer to the first amended complaint. After a hearing on May 20, the court entered an order sustaining the demurrer with leave to amend.

Dan Clark filed a second amended complaint on July 30, 2008. The Miramonteses demurred to the second amended complaint, and the trial court held a hearing on the demurrer on October 8, 2008. The court sustained this demurrer as well, and again granted Dan Clark leave to amend.

---

[5] At some point, Dan Clark came to believe that Alejandro Miramontes was in possession of the Vehicles along with Julieta.

Dan Clark filed a third amended complaint on November 14, 2008, alleging causes of action for claim and delivery and conversion. The Miramonteses demurred to this complaint, and the court held an initial hearing on the matter on February 3, 2009. On June 25, the trial court issued a tentative ruling sustaining the demurrer to the third amended complaint, this time without leave to amend. The court held a second hearing on the matter on July 30. At the conclusion of the July 30 hearing, the court affirmed its tentative ruling.

The court sustained the demurrer after concluding that Dan Clark's lawsuit—which was filed in July 2007—was untimely under the applicable three-year statute of limitations. The court determined that Dan Clark's cause of action against Frehner for conversion accrued at the time Dan Clark learned of the conversion, which, the court found, occurred in 2001. The court further determined that "a new conversion occurred when Frehner transferred possession of the trailers to defendants on March 27, 2002 . . . and the cause of action against defendants accrued at that time." The court rejected Dan Clark's arguments that the delayed discovery rule applied to the causes of action, and/or that the statute of limitations had been tolled, based on section 351, during the time that the Miramonteses were out of the state.

The trial court entered judgment in favor of the Miramonteses on August 17, 2009.

Dan Clark filed a timely notice of appeal on October 15, 2009.

### III.

### DISCUSSION

On appeal, the parties do not dispute the trial court's determinations that (1) Dan Clark's causes of action against the Miramonteses accrued on March 27, 2002; (2) the applicable statute of limitations is three years; and (3) Dan Clark initiated its action on July 20, 2007. The parties thus appear to agree that Dan Clark's claims are untimely unless there is some basis for tolling the statute of limitations. Dan Clark contends that it has alleged sufficient facts to support tolling the statute of limitations pursuant to section 351, which provides: "If, when the cause of action accrues against a person, he is out of the state, the action may be commenced within the term herein limited, after his return to the state, and if, after the cause of action accrues, he departs from the state, the time of his absence is not part of the time limited for the commencement of the action."

According to Dan Clark, its allegations that the Miramonteses were absent from the state for personal reasons for an unspecified period of time between

the alleged conversion and the filing of the complaint are sufficient to prevent the court from determining that its action is untimely as a matter of law.

## A. Standards of review

We review de novo an order sustaining a demurrer to determine whether the complaint alleges facts sufficient to state a cause of action. (*CPF Agency Corp. v. Sevel's 24 Hour Towing Service* (2005) 132 Cal.App.4th 1034, 1042 [34 Cal.Rptr.3d 120].) We exercise our independent judgment as to whether the complaint states a cause of action, "giv[ing] the complaint a reasonable interpretation" and "treat[ing] the demurrer as admitting all properly pleaded material facts." (*Palestini v. General Dynamics Corp.* (2002) 99 Cal.App.4th 80, 86 [120 Cal.Rptr.2d 741].)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

## B. Relevant law

### 1. Commerce Clause

■ "The Commerce Clause, while literally a grant of power to Congress, also restricts states from passing laws that interfere with interstate commerce. [Citations.] 'This "negative" aspect of the Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.' [Citations.]" (*Fireside Nissan v. Fanning* (1st Cir. 1994) 30 F.3d 206, 214 (*Fireside*).) "Laws that have either the *purpose* or *effect* of discriminating against interstate commerce will be struck down as unconstitutional unless the state can establish that there is no reasonable alternative method of safeguarding a legitimate local interest. [Citations.]" (*Ibid.*)

"In the absence of discrimination, state action that interferes with or burdens interstate commerce will be struck down if the local interest is not very substantial or if the burdens imposed on interstate commerce are excessive in relation to the putative benefits of the state's action. [Citations.] Thus, when a state law regulates in-state and out-of-state businesses evenhandedly, courts should apply 'less strict scrutiny' or a more lenient balancing test than they would apply in the case of discrimination against interstate commerce. [Citations.]" (*Fireside, supra,* 30 F.3d at p. 214; see also *Pike v.*

*Bruce Church, Inc.* (1970) 397 U.S. 137, 142 [25 L.Ed.2d 174, 90 S.Ct. 844] ["If the statute does not impermissibly discriminate, then the statute is valid unless the burden imposed on interstate commerce is 'clearly excessive' in relation to the putative local benefits."].)

The United States Supreme Court has noted that while "there is no clear line separating the category of state regulation that is virtually *per se* invalid under the Commerce Clause, and the category subject to the *Pike* v. *Bruce Church* balancing approach . . . [i]n either situation the critical consideration is the overall effect of the statute on both local and interstate activity." (*Brown-Forma Distillers v. N. Y. Liquor Auth.* (1986) 476 U.S. 573, 579 [90 L.Ed.2d 552, 106 S.Ct. 2080].)

### 2. *Commerce Clause limitations on tolling statutes of limitation*

■ In *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.* (1988) 486 U.S. 888 [100 L.Ed.2d 896, 108 S.Ct. 2218] (*Bendix*), the United States Supreme Court considered whether an Ohio statute that tolled claims against defendants who were not present in the state violated the Commerce Clause.[6] The defendant in *Bendix* was an out-of-state corporation that had delivered and installed a boiler system at the plaintiff's facility in Ohio. (*Bendix, supra,* at pp. 889–890.) The court noted that "[a]lthough statute of limitations defenses are not a fundamental right [citation], it is obvious that they are an integral part of the legal system and are relied upon to project the liabilities of persons and corporations active in the commercial sphere." (*Id.* at p. 893.) "The State may not withdraw such defenses on conditions repugnant to the Commerce Clause. Where a State denies ordinary legal defenses or like privileges to out-of-state persons or corporations engaged in commerce, the state law will be reviewed under the Commerce Clause to determine whether the denial is discriminatory on its face or an impermissible burden on commerce. The State may not condition the exercise of the defense on the waiver or relinquishment of rights that the foreign corporation would otherwise retain. [Citations.]" (*Ibid.*)

The *Bendix* court concluded that subjecting nonresident corporate defendants to an indefinite statute of limitations because they are not present in the

---

[6] The Ohio statute provided, " 'When a cause of action accrues against a person, if he is out of the state, has absconded, or conceals himself, the period of limitation for the commencement of the action as provided in sections 2305.04 to 2305.14, 1302.98, and 1304.29 of the Revised Code, does not begin to run until he comes into the state or while he is so absconded or concealed. After the cause of action accrues if he departs from the state, absconds, or conceals himself, the time of his absence or concealment shall not be computed as any part of a period within which the action must be brought.' " (*Bendix, supra,* 486 U.S. at p. 890, fn. 1, quoting Ohio Rev. Code Ann., § 2305.15 (Supp. 1987).)

state impermissibly burdens interstate commerce.[7] The court stated, "Ohio cannot justify its statute as a means of protecting its residents from corporations who become liable for acts done within the State but later withdraw from the jurisdiction, for it is conceded by all parties that the Ohio long-arm statute would have permitted service on [the defendant] throughout the period of limitations. The Ohio statute of limitations is tolled only for those foreign corporations that do not subject themselves to the general jurisdiction of Ohio courts. In this manner the Ohio statute imposes a greater burden on out-of-state companies than it does on Ohio companies, subjecting the activities of foreign and domestic corporations to inconsistent regulations. [Citation.]" (*Bendix, supra*, 486 U.S. at p. 894.)

The *Bendix* court was concerned with the fact that "[t]he Ohio statutory scheme . . . forces a foreign corporation to choose between exposure to the general jurisdiction of Ohio courts or forfeiture of the limitations defense, remaining subject to suit in Ohio in perpetuity." (*Bendix, supra*, 486 U.S. at p. 893.) "Requiring a foreign corporation to appoint an agent for service in all cases and to defend itself with reference to all transactions, including those in which it did not have the minimum contacts necessary for supporting personal jurisdiction, is a significant burden [on commerce]. [Citation.]" (*Ibid.*) The court thus concluded that the burden imposed on interstate commerce exceeded any local interest that the state might advance (e.g., the state's interest in adjusting for the greater degree of difficulty that a resident might have in serving a foreign defendant). (*Id.* at pp. 893–895.)

Since *Bendix* was decided, a number of courts have considered whether application of section 351 violates the Commerce Clause. For example, in *Abramson v. Brownstein* (9th Cir. 1990) 897 F.2d 389, 392 (*Abramson*), a federal appeals court held that section 351 placed an unreasonable burden on interstate commerce with regard to an individual nonresident (as opposed to a corporate nonresident like the defendant in *Bendix*) who engaged in commerce within California. *Abramson* involved a Massachusetts resident who had entered into an agreement with two California residents to sell them gold coins and currency. The parties negotiated the transaction over the telephone. The California plaintiffs filed an untimely suit for breach of contract and fraud, but asserted that section 351 tolled the applicable statutes of limitations for the time period during which the defendant had been in Massachusetts.

The *Abramson* court determined that "Brownstein was engaged in interstate commerce when, as a Massachusetts resident, he entered into a sales

---

[7] In analyzing the impact of the Ohio tolling statute under the Commerce Clause, the court commented that while the statute "might have been held to be a discrimination that invalidates without extended inquiry," the court would nevertheless apply the *Pike* balancing test and consider whether the statute impermissibly burdened interstate commerce. (*Bendix, supra*, 486 U.S. at p. 891.)

transaction with Californians Abramson and World." (*Abramson, supra,* 897 F.2d at p. 392.) The court therefore weighed the state's putative interests against the interstate restraints " 'to determine if the burden imposed is an unreasonable one.' [Citation.]" (*Ibid.*) With regard to the burden imposed, the *Abramson* court stated: "On the burden side, the statute requires a person engaged in interstate commerce outside of California to be in California for the appropriate limitations period in order to avoid the application of the tolling statute. This is a different burden from the one imposed by the Ohio statute in *Bendix,* where foreign corporations were required to appoint an agent in Ohio and thereby subject themselves to the general jurisdiction of the Ohio courts in order to avoid the application of the tolling provision. Nevertheless, *the California statutory scheme forces a nonresident individual engaged in interstate commerce to choose between being present in California for several years or forfeiture of the limitations defense, remaining subject to suit in California in perpetuity.* [Citation.] Section 351 imposes a significant burden." (*Abramson, supra,* at p. 392, italics added.)

On the other side of the weighing analysis, the *Abramson* court noted the local interest that supported application of section 351, as identified by the California Supreme Court in *Dew v. Appleberry* (1979) 23 Cal.3d 630 [153 Cal.Rptr. 219, 591 P.2d 509] (*Dew*). In *Dew,* the Supreme Court stated, "The Legislature may justifiably have concluded that a defendant's physical absence impedes his availability for suit, and that it would be inequitable to force a claimant to pursue the defendant out of state in order effectively to commence an action within the limitations period. . . . [¶] . . . [¶] . . . [S]ection 351 . . . rationally alleviates any hardship that would result by compelling plaintiff to pursue defendant out of state." (*Dew, supra,* at pp. 636–637.)

The *Abramson* court concluded that applying the statute in the case before it would impermissibly burden interstate commerce, since the articulated local interest did not support the corresponding burden created by the California tolling statute. (*Abramson, supra,* 897 F.2d at p. 393.)

In *Filet Menu, Inc. v. Cheng* (1999) 71 Cal.App.4th 1276, 1283 [84 Cal.Rptr.2d 384] (*Filet Menu*), a California appellate court considered the application of the tolling provision of section 351 to a resident defendant who was alleged to have been out of the state for various periods of time after the plaintiff's cause of action had accrued.[8] The court found that application of section 351 to toll claims against California residents violates the Commerce Clause to the extent that it "imposes a special burden on residents who travel in the course of interstate commerce that is not shared by

---

[8] Although the underlying complaint in *Filet Menu* named as individual defendants both a resident of California and a nonresident, the only issue on appeal pertained to the trial court's sustaining of the demurrer without leave to amend as to the resident defendant.

residents involved solely in 'local business and trade . . . .' [Citation.]" (*Filet Menu, supra*, at p. 1282.) The *Filet Menu* court noted that "[r]esidents travel outside California for many reasons unrelated to the service of interstate commerce," and asserted that "tolling statutory periods for the duration of out-of-state travel unrelated to interstate commerce does not violate the commerce clause. [Citation.]" (*Id.* at p. 1283.) A violation of the Commerce Clause would occur only where tolling is applied to "travel for the facilitation of interstate commerce." (71 Cal.App.4th at p. 1283.)

Because the complaint in *Filet Menu* did not "describe the extent to which [the defendant's] absences from the state were in the course of interstate commerce," the court concluded that the complaint could "not establish that applying . . . section 351 in the circumstances of this case violates the commerce clause." (*Filet Menu, supra*, 71 Cal.App.4th at p. 1284.) The court therefore reversed the judgment that the trial court had entered after it sustained the resident defendant's demurrer without leave to amend. (*Ibid.*)

More recently, in *Heritage Marketing & Ins. Services., Inc. v. Chrustawka* (2008) 160 Cal.App.4th 754 [73 Cal.Rptr.3d 126] (*Heritage Marketing*), the appellate court determined that section 351 could not be applied to toll the statute of limitations against individual defendants who had previously been California residents, but who had moved to Texas and had remained there after the move.

The *Heritage Marketing* plaintiffs owned a business in California that provided living trust services. The defendants were employees of the plaintiffs' various related businesses who had left their employment with the plaintiffs and moved to Texas. (*Heritage Marketing, supra*, 160 Cal.App.4th at p. 758.) A few months after the defendants moved to Texas, they opened a business that the plaintiffs alleged competed with the plaintiffs' business. (*Ibid.*) Four years after the defendants opened their business in Texas, the plaintiffs filed suit against the defendants, claiming breach of contract (against only one of the defendants), conspiracy to defraud, defamation, tortious interference with economic advantage, slander per se, and violation of California's Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.). (*Heritage Marketing, supra*, at p. 758.)

The defendants asserted that the claims were barred by the applicable statutes of limitations. In response, the plaintiffs contended that section 351 applied to toll the statutes of limitations for the period(s) of time that the defendants had been in Texas. The *Heritage Marketing* court noted that where a statute of limitations defense is denied to " 'out-of-state persons or corporations engaged in commerce,' it must 'be reviewed under the Commerce Clause

to determine whether the denial is discriminatory on its face or an impermissible burden on commerce.' " (*Heritage Marketing, supra*, 160 Cal.App.4th at p. 759, quoting *Bendix, supra*, 486 U.S. at p. 893.)

The *Heritage Marketing* court noted other cases in which an individual defendant had moved to another state after a cause of action had accrued. (See *Pratali v. Gates* (1992) 4 Cal.App.4th 632, 643 [5 Cal.Rptr.2d 733] [defendant who permanently moved to Idaho after judgment was entered against him on a promissory note was a noncommercial defendant not engaged in interstate commerce, and applying § 351 to toll claims against him thus did not violate the Commerce Clause]; *Tesar v. Hallas* (N.D. Ohio 1990) 738 F.Supp. 240, 242 [applying Ohio tolling statute to a defendant who moved from Ohio to Pa. to take a new job would violate the Commerce Clause because the statute unreasonably burdened the flow of persons between states for employment purposes]; *State ex rel. Bloomquist v. Schneider* (Mo. 2008) 244 S.W.3d 139, 142–143 (*Bloomquist*) [applying tolling statute against defendant who left Mo. after cause of action accrued would violate Commerce Clause because "it plainly discourages and burdens his ability to move from state to state . . ."].) The *Heritage Marketing* court also cited *Bottineau Farmers Elevator v. Woodward-Clyde* (8th Cir. 1992) 963 F.2d 1064, 1073–1074, "which applied *Bendix* to a North Dakota tolling provision that extended the limitations period against nonresidents, concluding that it impermissibly burdened interstate commerce '*because it forces a non-resident defendant to choose between being physically present in the state for the limitations period or forfeiting the statute of limitations defense.*' [Citation.]" (*Heritage Marketing, supra*, 160 Cal.App.4th at p. 763, italics added.)

■ The *Heritage Marketing* court adopted the reasoning of the *Bloomquist* court that " ' "[t]he state's interest in aiding its residents' efforts to litigate against non-resident defendants d[oes] not justify denying non-residents the protections of the statute of limitations, particularly when long-arm service of process was available." [Citation.]' [Citation.]" (*Heritage Marketing, supra*, 160 Cal.App.4th at p. 763.) The *Heritage Marketing* court explained, "Section 351 penalizes people who move out of state by imposing a longer statute of limitations on them than on those who remain in the state. The commerce clause protects persons from such restraints on their movements across state lines. [Citation.] By creating disincentives to travel across state lines and imposing costs on those who wish to do so, the statute prevents or limits the exercise of the right to freedom of movement. Applying section 351 under the facts of this case would impose an impermissible burden on interstate commerce as it would force defendants to choose between remaining residents of California until the limitations periods expired or moving out of state and forfeiting the limitations defense, thus 'remaining subject to suit in California in perpetuity.' [Citation.]" (*Heritage Marketing, supra*, at pp. 763–764.)

## C. *Analysis*

Under *Bendix*, we first consider whether application of section 351 in this case "denies ordinary legal defenses or like privileges to out-of-state persons . . . engaged in commerce." (*Bendix, supra*, 486 U.S. at p. 893.) If it does, then we review "the state law . . . under the Commerce Clause to determine whether the denial is discriminatory on its face or an impermissible burden on commerce." (*Ibid.*)

The allegations of the complaint in the present case demonstrate that the Miramonteses are "out-of-state persons" who were "engaged in commerce" when they purchased the Vehicles from Frehner. Dan Clark alleges that "Frehner purported to convey ownership of the Vehicles to Defendants" in March 2002, and further alleges that "[t]he 'purchase' took place in Las Vegas, Nevada." Although Dan Clark also alleges that the Miramonteses knew that Frehner did not possess title to the Vehicles, or, at a minimum, acted unreasonably in failing to demand proof that Frehner owned the Vehicles, this does not alter the fact that the conduct underlying Dan Clark's claims is a commercial transaction—and an interstate commercial transaction, at that. Because the allegations of the complaint demonstrate that the Miramonteses were "engaged in commerce" when they participated in the underlying transaction at issue, application of section 351 in this instance would serve to "den[y] ordinary legal defenses or like privileges to [an] out-of-state person[] . . . engaged in commerce." (*Bendix, supra*, 486 U.S. at p. 893.) Since applying section 351 in this case would deny the Miramonteses the ordinary legal defense of the statute of limitations, we review its application "under the Commerce Clause to determine whether the denial is discriminatory on its face or an impermissible burden on commerce." (*Bendix, supra*, at p. 893.)

Even assuming that the application of section 351 to toll the statute of limitations in this case is not discriminatory,[9] we conclude that application of the statute would place an impermissible burden on commerce, since the burden is significant when compared with the minimal state interest in this case.

██ A statute imposes a burden when it inhibits the flow of goods interstate. (See *Ford Motor Co. v. Texas Dept. of Transportation* (5th Cir. 2001) 264 F.3d 493, 503.) "An 'excessive' burden 'in relation to' putative

---

[9] The statute is not, on its face, discriminatory, since it ostensibly treats residents and nonresidents alike. However, the effect of the tolling provisions of section 351 may have a discriminatory effect on nonresidents engaged in commerce, in that nonresident defendants could be subjected to an indefinite tolling of the statute of limitations, while resident defendants would not.

benefits, we elaborated in [*National Electrical Manufacturers Assn. v. Sorrell* (2d Cir. 2001) 272 F.3d 104] is a burden on interstate commerce that is 'different from' the burden imposed on intrastate commerce. [*Sorrell,*] at [page] 109 (stating that, 'to run afoul of the *Pike* standard, the statute . . . must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce')." (*Brown & Williamson Tobacco Corp. v. Pataki* (2d Cir. 2003) 320 F.3d 200, 209.)

Application of section 351 would force defendants like the Miramonteses to choose between remaining in California until the limitations period expired, or returning to their place of residence, thereby forfeiting the limitations defense and remaining "subject to suit in California in perpetuity." (*Abramson, supra,* 897 F.2d at p. 392.) Putting a nonresident defendant to such a choice discourages interstate travel, or travel from California to Mexico, and thus burdens any commerce that the individual might choose to engage in during those travels.

Dan Clark contends that the Miramonteses "are not presented with the same 'Hobson's Choice' " as were the defendants in *Heritage Marketing.* Dan Clark bases this claim on the fact that the defendants in *Heritage Marketing* "would have been required to forego any desire to move out of California to avoid the tolling of the statute of limitations," while the Miramonteses already "live in Mexico." However, application of section 351 would force the Miramonteses to remain in California for the duration of the statute of limitations, or face indefinite potential liability under California law. Although application of section 351 would not affect the Miramonteses in terms of forcing them to choose between *remaining* residents of California or being subject to suit in perpetuity, it would essentially force them to either *become* residents of California or to be subject to suit in California in perpetuity. This choice is not fundamentally different from the choice that the defendants in *Heritage Marketing* faced. Further, this is precisely the choice that the *Abramson* court found to be untenable under the Commerce Clause when it concluded that applying section 351 in that case would impermissibly burden interstate commerce because "the California statutory scheme forces a nonresident individual engaged in interstate commerce to choose between being present in California for several years or forfeiture of the limitations defense, remaining subject to suit in California in perpetuity. [Citation.]" (*Abramson, supra,* 897 F.2d at p. 392.)

Further, the state's interests in applying the tolling provisions of section 351 do not outweigh the burdens on interstate commerce that would result from application of section 351 in this case. Just as the *Bendix* court determined that "Ohio cannot justify its statute as a means of protecting its residents from corporations who become liable for acts done within the State but later

withdraw from the jurisdiction, for it is conceded by all parties that the Ohio long-arm statute would have permitted service on Midwesco throughout the period of limitations" (*Bendix, supra,* 486 U.S. at p. 894), neither can California justify its statute, since it, too, has a long-arm statute that would permit service on foreign defendants like the Miramonteses.[10]

Dan Clark contends that *Filet Menu* is the governing authority in this case, and asserts that because the complaint alleges that the Miramonteses "spent time outside of California for personal reasons, and not for the purpose of engaging in interstate commerce," the complaint does not affirmatively show, on its face, that the lawsuit is untimely. According to Dan Clark, the "focus of a Section 351 analysis should be on the reason why the defendant left California, and if that reason does not involve commerce, the Commerce Clause is not implicated." We find this argument unpersuasive.

*Filet Menu* involved a resident defendant. A resident defendant does not face the same unpalatable choice that a nonresident faces with respect to the tolling of the statute of limitations under section 351—i.e., to remain in California, or be subject to suit in perpetuity. A resident defendant engaged in commerce in the State of California automatically receives the benefits of California's statute of limitations by virtue of his or her presence in California. A nonresident defendant, on the other hand, is potentially subject to liability in California indefinitely. Such application of the tolling statute discourages nonresidents from engaging in commercial transactions in California. Applying the tolling provisions of section 351 to a nonresident defendant engaged in commerce burdens interstate commerce in a way that applying it to a resident defendant who leaves the state for personal reasons does not. This result is impermissible under the Commerce Clause.

 Application of the tolling provision of section 351 in this case would violate the Commerce Clause. Because Dan Clark filed its complaint more than three years after its claims accrued, the claims are barred by the applicable statute of limitations. Dan Clark has not established that it could amend its pleadings in such a way as to resurrect its untimely claims. (See *Blank v. Kirwan, supra,* 39 Cal.3d at p. 318 [the plaintiff bears the burden of proving there is a reasonable possibility that a defect in the pleadings can be cured by amendment].) The trial court therefore acted reasonably in sustaining the demurrer without leave to amend.

---

[10] Dan Clark contends that "it is far from clear that California's long arm statute could be employed to effect service on Defendants" because there remain questions as to what would constitute effective service under the Inter-American Convention on Letters Rogatory (Jan. 30, 1975), which allows for service of Mexican nationals living in Mexico. The fact that implementing effective service on a Mexican national living in Mexico may be difficult does not mean that California's long-arm statute does not permit service on the Miramonteses.

## IV.

## DISPOSITION

The judgment of the trial court is affirmed. Respondents shall recover costs on appeal.

Haller, Acting P. J., and McDonald, J., concurred.