the name of the offense, as designated by the Legislature.[10] The name of the crime does not change or affect its elements. And those elements control our review. When reviewing the sufficiency of the evidence to support a conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[11] Here, both elements of the crime were clearly established. And that should be the end of our inquiry.

I would affirm Covey's conviction. Therefore, I respectfully dissent.

HEAVICAN, C.J., and STEPHAN, J., join in this dissent.

―――――――――――

[10] See § 28-638(1)(c).

[11] *State v. Nave*, 284 Neb. 477, 821 N.W.2d 723 (2012).

―――――――――――

FIRST TENNESSEE BANK NATIONAL ASSOCIATION,
SUCCESSOR BY MERGER TO FIRST HORIZON
HOME LOAN CORPORATION, APPELLANT,
v. JASON NEWHAM, APPELLEE.

___ N.W.2d ___

Filed February 27, 2015.    No. S-14-326.

1. **Summary Judgment.** Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

3. **Jurisdiction: Appeal and Error.** It is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

4. **Summary Judgment: Evidence: Proof.** After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence was uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion.

Appeal from the District Court for Cass County: Jeffrey J. Funke, Judge. Affirmed.

Brian J. Muench for appellant.

Edward F. Noethe and Michael G. Monday, of McGinn, McGinn, Springer & Noethe, for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## INTRODUCTION

A lender sued upon a promissory note. The district court determined that the action was barred by a California statute of limitations and entered summary judgment in the borrower's favor. On appeal, the lender contends that the limitations period was tolled by either a California statute or a provision of the Servicemembers Civil Relief Act (SCRA).[1] We affirm. The California tolling statute could not be applied against the borrower, a nonresident of California, without violating the Commerce Clause.[2] And the borrower's membership in the National Guard provided no basis to toll the limitations period.

## BACKGROUND

Jason Newham executed a promissory note dated September 8, 2005, in favor of First Horizon Home Loan Corporation in the amount of $182,000. Newham used the funds to refinance a prior mortgage on real property located in Dixon, California. At that time, Newham was a resident of California and "in active duty, Air Force," stationed at Travis Air Force Base. Payments on the note were due on the first of every month, and the note was secured by a deed of trust for the property.

Sometime after execution of the note, First Horizon Home Loan Corporation merged with First Tennessee Bank National

---

[1]  50 U.S.C. app. § 501 et seq. (2012).

[2]  U.S. Const. art. I, § 8, cl. 3.

Association (First Tennessee). As a result, First Tennessee became the holder of the note.

Newham left California and vacated the property in May 2007. He made his last payment on the note on August 6. He resided in Papillion, Nebraska, until September, when he moved to Kansas to work for an aircraft company as a demonstration pilot. Although Newham had joined the North Dakota National Guard in July 2007, he did not move to North Dakota until June 2009. With the North Dakota National Guard, he was "part-time for the first [2] years, and then . . . full-time, at the state level, for the last . . . almost [3] years." Newham later moved to Minnesota, but he returned to Nebraska in June 2013.

On August 5, 2013, First Tennessee filed a complaint against Newham, alleging that he was in default on the note and seeking damages in the amount of $274,467.13, plus interest. In response, Newham moved for summary judgment and alleged that First Tennessee's suit was barred by the statute of limitations. First Tennessee filed an amended complaint and alleged that Newham was an "absconding debtor."

At the summary judgment hearing, Newham's counsel argued that First Tennessee's action was governed by California law and that First Tennessee had failed to bring the action within 4 years as required by Cal. Civ. Proc. Code § 337 (West 2006). First Tennessee, however, asserted that the statute of limitations had been tolled by either Cal. Civ. Proc. Code § 351 (West 2006) or 50 U.S.C. app. § 526(a). As discussed in greater detail below, § 351 tolls the statute of limitations during the period of time that a defendant is outside of California and § 526(a) tolls the statute of limitations during the "period of a servicemember's military service," as defined by relevant federal law.

The district court also received various discovery into evidence, including Newham's answers to interrogatories and his deposition testimony. As to his current employment status, Newham stated that he is a "part-time member" of the Nebraska Air National Guard. His position does not entail active duty status. When asked to provide the dates and duty stations of his periods of active duty, Newham indicated that

his most recent period of active duty was from March 2005 to July 2007 at Travis Air Force Base.

As to his repayment of the note, Newham confirmed that he made his last payment on August 6, 2007, and that he "was in breach of the contract" as of September 2. Additionally, he testified that he never returned to California after he vacated the property.

On February 3, 2014, the district court entered summary judgment in Newham's favor. In its order, the court determined that First Tennessee's claim was governed by the California statute of limitations and that First Tennessee had failed to file suit within the 4-year limitations period. As to the tolling provision of Cal. Civ. Proc. Code § 351, the court concluded that, if applied against Newham, § 351 would violate the Commerce Clause of the U.S. Constitution. However, the court did not address the tolling provision of 50 U.S.C. app. § 526(a).

First Tennessee moved for new trial and alleged that the district court erred in failing to apply § 526(a). Additionally, First Tennessee asserted that Newham had the burden to show that the application of § 351 would violate the Commerce Clause. And it alleged that applying § 351 would not result in any constitutional violation.

At the hearing on First Tennessee's motion, the district court acknowledged that it had failed to consider § 526(a) in its summary judgment order. However, it clarified that in considering the statute of limitations, it had reviewed § 526(a) and concluded that it did not apply because Newham was not on active duty. The court explained that it did not set forth its analysis in the order, because it "did not believe it was relevant and necessary, based on the information."

The district court overruled the motion for new trial, and First Tennessee filed a notice of appeal. We moved the case to our docket pursuant to statutory authority.[3]

---

[3] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

## ASSIGNMENTS OF ERROR

First Tennessee assigns, consolidated and restated, that the district court erred in finding that the statute of limitations was not tolled by either (1) Cal. Civ. Proc. Code § 351 or (2) 50 U.S.C. app. § 526(a).

## STANDARD OF REVIEW

[1] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[4]

[2] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[5]

## ANALYSIS

### JURISDICTION

[3] We first dispose of a preliminary matter. Although neither party has alleged a jurisdictional defect, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[6]

After the district court entered summary judgment, First Tennessee timely filed a motion for new trial, which, despite its title, we treat as a motion to alter or amend the judgment.[7] The motion terminated the time for taking an appeal.[8]

---

[4] *Ballard v. Union Pacific RR. Co.*, 279 Neb. 638, 781 N.W.2d 47 (2010).

[5] *Id.*

[6] See *In re Interest of Thomas M.*, 282 Neb. 316, 803 N.W.2d 46 (2011).

[7] See *Strong v. Omaha Constr. Indus. Pension Plan*, 270 Neb. 1, 701 N.W.2d 320 (2005), *abrogated in part, Kennedy v. Plan Administrator for DuPont Sav. and Investment Plan*, 555 U.S. 285, 129 S. Ct. 865, 172 L. Ed. 2d 662 (2009).

[8] See *id.*

First Tennessee's notice of appeal was timely filed after the terminating motion was overruled. Thus, we have jurisdiction of the appeal.

### California Law Applies

Having established our jurisdiction over the appeal, we turn to First Tennessee's assignments of error. The parties agree that California law applies.

Neither party contests the conclusion that First Tennessee's claim was governed by the 4-year limitations period of Cal. Civ. Proc. Code § 337. And it is clear that First Tennessee did not file suit within the limitations period. Newham acknowledged that he was in default on the note on September 2, 2007. While First Tennessee contended at oral argument that Newham was in default as of September 3, the specific date of default makes no difference to our analysis. First Tennessee did not file the present action until August 5, 2013, nearly 6 years later.

First Tennessee asserts only two statutory bases for tolling the statute of limitations. We therefore limit our analysis to whether the limitations period was tolled by either Cal. Civ. Proc. Code § 351 or 50 U.S.C. app. § 526(a).

### Cal. Civ. Proc. Code § 351

Because Cal. Civ. Proc. Code § 351 is a California statute, we set forth its full text.

> Exception, where defendant is out of the State. If, when the cause of action accrues against a person, he is out of the State, the action may be commenced within the term herein limited, after his return to the State, and if, after the cause of action accrues, he departs from the State, the time of his absence is not part of the time limited for the commencement of the action.

As discussed above, the district court determined that § 351 could not be applied to toll the limitations period, because its application against Newham, a nonresident of California, would violate the Commerce Clause of the U.S. Constitution. We agree.

State tolling statutes, such as § 351, raise constitutional concerns due to their potential effect on interstate commerce. As the U.S. Supreme Court expressed in *Bendix Autolite Corp. v. Midwesco Enterprises*,[9] "Where a State denies ordinary legal defenses or like privileges to out-of-state persons or corporations engaged in commerce, the state law will be reviewed under the Commerce Clause to determine whether the denial is discriminatory on its face or an impermissible burden on commerce."[10] In that case, the Court determined that an Ohio tolling statute violated the Commerce Clause when applied to a foreign corporation, because it imposed a greater burden on foreign corporations than it imposed on Ohio corporations. The statute "force[d] a foreign corporation to choose between exposure to the general jurisdiction of Ohio courts or forfeiture of the limitations defense, remaining subject to suit in Ohio in perpetuity."[11]

In considering § 351, California courts have similarly found that it violates the Commerce Clause by forcing nonresident defendants to be present in California for the duration of the limitations period or to forfeit the limitations defense.[12] In *Heritage Marketing Services v. Chrustawka*,[13] the defendants were former California residents who had moved out of the state to reside in Texas. The California Court of Appeal concluded that § 351 could not be applied against them without violating the Commerce Clause. Applying § 351 would impose an impermissible burden on interstate commerce, because it would "creat[e] disincentives to travel across state lines and impos[e] costs on those who wish to do

---

[9] *Bendix Autolite Corp. v. Midwesco Enterprises*, 486 U.S. 888, 108 S. Ct. 2218, 100 L. Ed. 2d 896 (1988).

[10] *Id.*, 486 U.S. at 893.

[11] *Id.*

[12] See, *Dan Clark Family Ltd. v. Miramontes*, 193 Cal. App. 4th 219, 122 Cal. Rptr. 3d 517 (2011); *Heritage Marketing Services v. Chrustawka*, 160 Cal. App. 4th 754, 73 Cal. Rptr. 3d 126 (2008).

[13] *Heritage Marketing Services*, *supra* note 12.

so."[14] Further, in *Dan Clark Family Ltd. v. Miramontes*,[15] the California Court of Appeal concluded that § 351 could not be applied against defendants who were residents of Mexico. In that case, § 351 would force the defendants to "either *become* residents of California or to be subject to suit in California in perpetuity."[16]

We find the above cases to be instructive and conclude that the application of § 351 against Newham would violate the Commerce Clause. Like the defendants in the above cases, Newham was a nonresident of California during the limitations period. Further, his status was identical to that of the defendants in *Heritage Marketing Services*, as a former resident of California who had permanently left the state. Applying § 351 against Newham would impose an impermissible burden on interstate commerce. Denying him the limitations defense would force similar defendants either to remain in California for the duration of the limitations period or to forfeit the limitations defense, remaining subject to suit in California in perpetuity. "Section 351 penalizes people who move out of state by imposing a longer statute of limitations on them than on those who remain in the state. The [C]ommerce [C]lause protects persons from such restraints on their movements across state lines."[17]

First Tennessee attempts to compare this case to *Filet Menu, Inc. v. Cheng*,[18] in which the California Court of Appeal concluded that the Commerce Clause was not violated by the application of § 351 against residents of California who traveled outside of the state for reasons unrelated to interstate commerce. And it claims that Newham had the burden of proving that his absence from California affected interstate commerce by being for the purpose of employment.

---

[14] *Id.* at 764, 73 Cal. Rptr. 3d at 132.

[15] *Dan Clark Family Ltd., supra* note 12.

[16] *Id.* at 233, 122 Cal. Rptr. 3d at 528.

[17] *Heritage Marketing Services, supra* note 12, 160 Cal. App. 4th at 763, 73 Cal. Rptr. 3d at 132.

[18] *Filet Menu, Inc. v. Cheng*, 71 Cal. App. 4th 1276, 84 Cal. Rptr. 2d 384 (1999).

But both of these arguments were rejected in the above cases. In *Dan Clark Family Ltd*., the California Court of Appeal dismissed the plaintiff's reliance upon *Filet Menu, Inc*., because *Filet Menu, Inc*. involved a resident defendant. "A resident defendant does not face the same unpalatable choice that a nonresident faces with respect to the tolling of the statute of limitations under [§] 351—i.e., to remain in California, or be subject to suit in perpetuity."[19] And in *Heritage Marketing Services*, the California Court of Appeal rejected the plaintiffs' argument that the defendants could have relocated to Texas for purposes other than employment, observing: "[P]laintiffs have not cited, nor have we found, any cases holding that interstate commerce is *not* affected when persons simply move out of state, as opposed to doing so for the purpose of taking or seeking new employment."[20] And in this case, the district court received ample evidence that Newham held numerous positions of employment in multiple states after his relocation from California. Thus, we are not persuaded that Newham's relocation from California did not affect interstate commerce.

We find no error in the district court's conclusion that § 351 could not be applied against Newham to toll the 4-year limitations period. Under the Commerce Clause, § 351 could not deprive Newham of an ordinary legal defense available to persons remaining within California. This assignment of error is without merit.

### 50 U.S.C. APP. § 526

First Tennessee further asserts that the district court erred in failing to apply 50 U.S.C. app. § 526(a) to toll the limitations period. Section 526 is part of the SCRA and provides, in relevant part:

> **(a) Tolling of statutes of limitation during military service**

---

[19] *Dan Clark Family Ltd*., *supra* note 12, 193 Cal. App. 4th at 234, 122 Cal. Rptr. 3d at 528.

[20] *Heritage Marketing Services, supra* note 12, 160 Cal. App. 4th at 762, 73 Cal. Rptr. 3d at 131.

The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns.

First Tennessee asserts that the district court incorrectly identified Newham as a "'reservist,'" rather than a "'full-time National Guard'" member.[21] And because Newham was a full-time National Guard member, First Tennessee claims that § 526(a) acted to toll the limitations period.

We acknowledge that the district court incorrectly identified Newham as a reservist at the hearing on First Tennessee's motion for new trial. All of the evidence received by the court identified Newham as a National Guard member. And Newham testified that he was a full-time member of the North Dakota National Guard for approximately 3 years. Further, Newham's membership in the North Dakota National Guard coincided with the limitations period. However, there was no basis to conclude that his National Guard membership activated the tolling effect of § 526(a).

The SCRA provides specific definitions for the terms used within § 526(a).[22] As stated above, § 526(a) tolls the limitations period during the "period of a servicemember's military service." And the "[p]eriod of military service" is defined as the "period beginning on the date on which a servicemember enters military service and ending on the date on which the servicemember is released from military service or dies while in military service."[23] Thus, it is apparent that the critical term in applying § 526(a) is "military service."

The question becomes whether Newham's National Guard membership qualified as "military service" under the SCRA.

---

[21] See brief for appellant at 8.

[22] See 50 U.S.C. app. § 511.

[23] 50 U.S.C. app. § 511(3).

Under the SCRA, "military service" has multiple definitions. But only the definitions under § 511(2)(A) were potentially applicable to Newham. That subsection defines "military service" as:

> [I]n the case of a servicemember who is a member of the Army, Navy, Air Force, Marine Corps, or Coast Guard—
>
> (i) active duty, as defined in section 101(d)(1) of title 10, United States Code, and
>
> (ii) in the case of a member of the National Guard, includes service under a call to active service authorized by the President or the Secretary of Defense for a period of more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds.

This definition provides only two means by which the SCRA could have tolled the California statute of limitations. If Newham was on "active duty" or if he was called to active service under the conditions specified in § 511(2)(A)(ii), tolling would result. But the evidence does not establish that either circumstance occurred.

It is clear that Newham was not on "active duty" as defined in 10 U.S.C. § 101(d)(1) (2012) during the limitations period. That provision defines "active duty" as

> full-time duty in the active military service of the United States. Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned. *Such term does not include full-time National Guard duty*.

(Emphasis supplied.)

"[F]ull-time National Guard duty" is expressly excluded from the definition of "active duty."[24] And multiple federal courts have recognized that full-time National Guard duty at

---

[24] See, 10 U.S.C. § 101(d)(1); *In re Ladd*, 516 B.R. 66 (D.S.C. 2014); *Freeman v. U.S.*, 98 Fed. Cl. 360 (2011).

the state level does not constitute federal active military service.[25] Newham indicated that his most recent period of active duty was from March 2005 to July 2007, when he was stationed at Travis Air Force Base. And he testified that his membership in the North Dakota National Guard was "full-time, at the state level." Thus, the evidence received at the summary judgment hearing established that Newham was not on "active duty" at any point during the limitations period.

First Tennessee points to the definition of "active service" under § 101(d)(3) and argues that there are two methods of being on "active duty." "[A]ctive Service" is defined as "service on active duty or full-time National Guard duty."[26] However, this argument ignores the definitions of the terms used within the SCRA.[27] As previously discussed, "military service" is limited to "active duty" as defined by § 101(d)(1). And that provision expressly excludes full-time National Guard duty.

As to the second possible definition of "military service," the district court received no evidence on that issue. There was no evidence that during his membership with the North Dakota National Guard, Newham was called to active service—authorized by the President or the Secretary of Defense—for a period of more than 30 consecutive days under 32 U.S.C. § 502(f) (2012), for purposes of responding to a national emergency.[28]

[4] And on that issue, First Tennessee bore the burden of proof. Newham established a prima face case for the application of the statute of limitations. After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence was uncontroverted at trial, the burden to produce evidence showing the existence of a material issue

---

[25] See, *Freeman, supra* note 24; *Bowen v. U.S.*, 49 Fed. Cl. 673 (2001), *affirmed* 292 F.3d 1383 (Fed. Cir. 2002) (construing predecessor act, Soldiers' and Sailors' Civil Relief Act of 1940).

[26] 10 U.S.C. § 101(d)(3).

[27] See 50 U.S.C. app. § 511.

[28] See 50 U.S.C. app. § 511(2)(A)(ii).

of fact that prevents judgment as a matter of law shifts to the party opposing the motion.[29] Thus, the burden shifted to First Tennessee to establish a genuine issue of material fact as to the tolling of the limitations period. But First Tennessee neither alleged nor presented any evidence that Newham had ever been called to active service to respond to a national emergency. No genuine issue was established as to whether Newham's National Guard membership met the second definition of "military service."[30]

In short, First Tennessee failed to establish any basis for concluding that the limitations period was tolled by § 526(a). Newham was not on "active duty" during his membership in the North Dakota National Guard, and no evidence was presented that he had ever been called to active service within the meaning of § 511(2)(A)(ii). This assignment of error is without merit.

## CONCLUSION

Both parties agree that First Tennessee was required to file suit within 4 years of Newham's breach of the promissory note. But no evidence was presented to the district court creating a genuine issue of fact as to the tolling of the limitations period. Because the present action was not filed until nearly 6 years after the breach, we affirm the entry of summary judgment in Newham's favor.

AFFIRMED.

---

[29] *Durre v. Wilkinson Development*, 285 Neb. 880, 830 N.W.2d 72 (2013). See *Andres v. McNeil Co.*, 270 Neb. 733, 707 N.W.2d 777 (2005).

[30] See 50 U.S.C. app. § 511(2)(A)(ii).